IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CORAM HEALTHCARE CORP. and | : | |
| CORAM, INC., | : | Case No. 00-3299 (MFW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Adv. Proc. No. 06-50639-MFW |
| ARLIN M. ADAMS, as Chapter 11 | : | |
| Trustee of the Bankruptcy | : | |
| Estates of Coram Healthcare | : | |
| Corp. and Coram, Inc., | : | |
| | : | |
| | : | |
| Plaintiff-Appellee, | : | **Objection Date:   TBA** |
| | : | **Hearing Date:   TBA** |
| v. | : | |
| | : | |
| GENESIS INSURANCE COMPANY, | : | |
| | : | |
| Defendant-Appellant. | : | |

**BRIEF OF DEFENDANT-APPELLANT GENESIS INSURANCE COMPANY
IN SUPPORT OF ITS MOTION FOR LEAVE TO APPEAL
THE AUGUST 7, 2006 ORDER OF THE BANKRUPTCY COURT**

Carmella P. Keener (DSBA No. 2810)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801
302.656.4433
ckeener@rmgglaw.com

Attorneys for Defendant-Appellant
Genesis Insurance Company

OF COUNSEL:
Lewis K. Loss
Thomas J. Judge
Thompson, Loss & Judge, LLP
1919 Pennsylvania Avenue, N.W.
Suite M-200
Washington, D.C. 20006-3458
   Tel: (202) 772-5170
   Fax: (202) 772-5180

Filed August 18, 2006

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDING ................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

QUESTION PRESENTED.............................................................................................. 4

SUMMARY OF ARGUMENT ...................................................................................... 4

ARGUMENT.................................................................................................................. 6

I.     UNDER WELL ESTABLISHED THIRD CIRCUIT PRECEDENT, THE
AUGUST 7 ORDER CONSTITUTES A "FINAL" ORDER .............................. 6

II.    IN THE ALTERNATIVE, THE AUGUST 7 ORDER SATISFIES THE
STANDARDS GOVERNING REVIEW OF INTERLOCUTORY
ORDERS OF THE BANKRUPTCY COURT ..................................................... 10

    A.     The Existence of Subject Matter Jurisdiction is Unquestionably a
Controlling Question of Law .................................................................. 11

    B.     The "Close Nexus" Test Applicable to Questions of Post-
Confirmation Jurisdiction Provides Substantial Ground for a
Difference of Opinion ............................................................................. 12

    C.     Reversal of the Bankruptcy Court Would Terminate the Adversary
Proceeding............................................................................................... 13

CONCLUSION............................................................................................................. 14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*American Flint Glass Workers Union v. Anchor Resolution
    Trust Corp.,*
    197 F.3d 76 (3d Cir. 1999)......................................................................................13

*In re Armstrong World Industries, Inc.,*
    423 F.3d 507 (3d Cir. 2005).....................................................................................6

*Bertoli v. D'Avella (In re Bertoli),*
    812 F.2d 136 (3d Cir. 1987)...................................................................................10

*Binder v. Price Waterhouse & Co. LLP (In re Resorts International, Inc.),* 372
    F.3d 154 (3d Cir. 2004).....................................................................................5, 12

*In re Brown,*
    916 F.2d 120 (3d Cir. 1990).....................................................................................8

*In re Christian,*
    804 F.2d 46 (3d Cir. 1986).......................................................................................8

*Commerce Bank v. Mountain View Village, Inc.,*
    5 F.3d 34 (3d Cir. 1993)...........................................................................................6

*In re Coram Healthcare Corp.,*
    315 B.R. 321 (Bankr. D. Del. 2004) ........................................................................3

*County Banking Trust Co. v. Kempner (In re Kempner),*
    152 B.R. 37 (D. Del. 1993).......................................................................................8

*Enterprise Energy Corp. v. United States (In re Columbia Gas System, Inc.),* 146
    B.R. 106 (D. Del. 1992)........................................................................................8, 9

*First American Bank v. Century Glove, Inc.,*
    64 B.R. 958 (D. Del. 1986).....................................................................................10

*Gibbons v. Stemcor USA, Inc. (In re B.S. Livingston & Co.),*
    186 B.R. 841 (D.N.J. 1995) ...........................................................................9, 10, 14

*In re GroupHealth Partnership, Inc.,*
    No. 92-0124, 1992 WL 96333 (E.D. Pa. Apr. 21, 1992)..................................11, 13

*Hylland v. Northwestern Corp. (In re Northwestern Corp.)*,
319 B.R. 68 (D. Del. 2005).................................................................................6, 7

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974)............................................................................11, 12

*Official Bondholders Committee v. Chase Manhattan Bank (In re Marvel
Entertainment Group, Inc.)*,
209 B.R. 832 (D. Del. 1997)...........................................................................11, 14

*Official Committee of Asbestos Personal Injury Claimants v. Sealed Air Corp. (In
re W.R. Grace & Co.)*, 285 B.R. 148 (Bankr. D. Del. 2002)..................................10

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984)..................................................................................12

*Southeastern Sprinkler Co. v. Meyertech Corp. (In re Meyertech Corp.)*, 831 F.2d
410 (3d Cir. 1987).............................................................................................6, 10

## DOCKETED CASES

*In re Coram Resource Network, Inc.*, Adversary Proceeding No. 01- 08795
(Bankr. D. Del. filed Nov. 13, 2001) .......................................................................2

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1334..........................................................................................1, 3, 4

28 U.S.C. § 157.........................................................................................1, 3, 4, 5

28 U.S.C. § 158............................................................................................ passim

28 U.S.C. § 1292..................................................................................10, 11, 13

Fed. R. Bankr. P. 8001 .........................................................................1, 4, 5, 10

Fed. R. Bankr. P. 8003 .............................................................................................1

## NATURE AND STAGE OF PROCEEDING

This is an appeal of an August 7, 2006 order by the bankruptcy judge, Mary F. Walrath, *C.U.S.B.J.*, entered on August 8, 2006, denying the motion of Defendant-Appellant Genesis Insurance Company ("Genesis") to dismiss the complaint filed in this adversary proceeding ("Adversary Proceeding"), brought by plaintiff Arlin M. Adams (the "Trustee") as the Chapter 11 Trustee of the post-confirmation bankruptcy estates of Coram Healthcare Corporation and its wholly-owned subsidiary Coram, Inc. (together, "Coram" or "Debtors"), for lack of subject matter jurisdiction. The Trustee seeks to recover compensatory damages for alleged breach of a Directors and Officers Liability Policy issued by Genesis to Coram.

The Complaint ("Complaint" or "Compl.") (D.I. 1) was filed against Genesis on April 26, 2006, and Genesis filed its motion to dismiss (D.I. 5-9) on June 7, 2006. The Bankruptcy Court heard oral argument on July 25, 2006, and, by order dated August 7, 2006 (D.I. 29), determined that the Bankruptcy Court has subject matter jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157(a), (c)(1), and 1334(b) "because it is related to a case under Title 11 of the United States Code." August 7 Order at 2 (attached hereto as Ex. A). As demonstrated below, the August 7 Order constitutes a final order from which Genesis may appeal as of right pursuant to 28 U.S.C. § 158(a)(1). However, to the extent that the August 7 Order may be deemed interlocutory, Genesis seeks leave to appeal the August 7 Order pursuant to 28 U.S.C. § 158(a)(3) and Rules 8001(b) and 8003 of the Federal Rules of Bankruptcy Procedure.

## STATEMENT OF FACTS

The Adversary Proceeding is a breach of contract action concerning the scope of coverage under Directors and Officers Liability Policy No. YXB001625A ("the Policy"), which Genesis issued to Coram for the period from January 8, 1999 through January 27, 2001 (the "Policy Period"). *See* Compl., Ex. A, Declarations, Item 2, as amended by Endorsement Form No. GIC 7426.A (08/93). The Trustee contends that Genesis is obligated under the Policy to reimburse Coram for amounts the Trustee agreed to pay to settle an adversary proceeding styled *In re Coram Resource Network, Inc.,* Adversary Proceeding No. 01- 08795 (Bankr. D. Del. filed Nov. 13, 2001) (the "Underlying Action"). *See* Compl., Ex. C (Settlement Agreement for Underlying Action).

The Underlying Action was brought by two subsidiaries of Coram, Coram Resource Network, Inc. and Coram Independent Practice Association, Inc. (collectively, "R-Net"), against Coram, certain of its other subsidiaries, certain of its officers and directors, and several other parties alleging breach of fiduciary duty and other counts. Though it was filed initially in this bankruptcy court, the reference was withdrawn.[1] Ultimately, the Trustee settled the Underlying Action for $7.95 million (an amount that purchased a release for all defendants in the Underlying Action, including certain entities that are not Insureds under the Policy). The Trustee settled the Underlying Action without first obtaining Genesis's written consent, despite the Policy's requirement that such consent occur. *See* Compl., ¶ 33; Ex. F (Letter from Genesis's counsel advising that

---

[1] Upon the motion of certain individual director and officer defendants, as well as a separate motion by defendants Stephen A. Feinberg and Cerberus, L.P., the bankruptcy court entered two orders determining that the conversion, breach of fiduciary duty, fraud, racketeering and alter-ego counts in the Underlying Action were "non-core matters." *See* Genesis Mot. to Dismiss, Judge Decl., Ex. 1. The district court subsequently entered an order withdrawing the reference of the Underlying Action to the bankruptcy court. *See id.,* Judge Decl., Ex. 2.

settlements to which Genesis did not consent are not subject to coverage under the Policy).[2]

The settlement of the Underlying Action was approved by the Bankruptcy Court in connection with the confirmation of the Trustee's Second Amended Joint Plan of Reorganization (the "Plan") on October 27, 2004. *See* Compl,. ¶ 28; *see also In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004). In this action, the Trustee seeks reimbursement from Genesis for the $7.95 million that he agreed to pay pursuant to that Settlement Agreement.

On June 7, 2006, Genesis filed a motion in the bankruptcy court seeking the dismissal of the Adversary Proceeding on the ground that the bankruptcy court lacked subject matter jurisdiction. Genesis argued that the single state law-based breach of contract claim asserted by the Trustee did not invoke a substantive right provided by title 11 nor did it have the requisite close nexus to the Plan, which had been confirmed a year and a half before the Trustee commenced the Adversary Proceeding. As such, Genesis submitted that the Adversary Proceeding constituted neither a "core" nor a "non-core" proceeding within the bankruptcy court's jurisdiction delineated under 28 U.S.C. §§ 157(b)(1) and 1334 as alleged by the Trustee in the Complaint. The Trustee opposed Genesis's motion, arguing that the bankruptcy court had jurisdiction over the Adversary

---

[2]   Section VI.A. of the Policy provides that:

> The Directors, Officers and the Company shall not admit liability for or settle any Claim, or incur Defense Costs in connection with any claim, without the Insurer's prior written consent, which consent shall not be unreasonably withheld. The Insurer shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent. Any Defense Costs incurred, and/or settlements or judgments agreed to prior to the Insurer's consent thereto shall not be covered by this Policy.

*See* Compl., Ex. A, Section VI.A.

Proceeding as one "related to" Coram's bankruptcy proceeding pursuant to 28 U.S.C. § 1334(b). Alternatively, the Trustee contended that the Adversary Proceeding fit the definition of a "core" proceeding under § 157(b).

The Bankruptcy Court heard oral argument on July 25, 2006. At the hearing, the Trustee agreed with Genesis that the Adversary Proceeding is not a core proceeding. Oral Arg. Tr. at 17 (attached hereto as Ex. B). The Bankruptcy Court concluded, however, that it could exercise jurisdiction over the Adversary Proceeding as a non-core proceeding because it was "related to" Coram's jointly administered bankruptcy cases. *Id.* at 16. In doing so, the Bankruptcy Court observed that the question was a close one. *Id* at 15. In an order dated August 7, 2006, the Bankruptcy Court denied the motion to dismiss, "finding that it has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a)&(c)(1) and 1334(b) because it is related to a case under Title 11 of the United States Code." August 7 Order at 2.

The August 7 Order was entered on August 8, 2006. Genesis has timely filed a notice of appeal and simultaneously the instant motion for leave to appeal pursuant to Federal Rule of Bankruptcy Procedure 8001(b).

## QUESTION PRESENTED

Whether the Bankruptcy Court erred in finding that this post-confirmation Adversary Proceeding is "related to" the Coram bankruptcy proceedings and therefore within its limited subject matter jurisdiction.

## SUMMARY OF ARGUMENT

The Bankruptcy Court correctly concluded that the Adversary Proceeding does not constitute any of the categories of proceedings qualifying as core proceedings under

-4-

28 U.S.C. § 157. Genesis seeks review, however, of the Bankruptcy Court's separate

conclusion that it nonetheless had jurisdiction over this action as a non-core proceeding

"related to" Coram's bankruptcy. Under the authority of 28 U.S.C. § 158(a), this Court

has jurisdiction to hear Genesis's appeal if it is a "final" order or, "with leave of the

court, [an] other interlocutory order[]." 28 U.S.C. § 158(a)(1), (2). The Third Circuit has

construed finality in the bankruptcy context through a pragmatic lens, holding that

denials of motions to dismiss may be deemed "final" for purposes of appellate review

where, among other circumstances, resolution of a controlling legal question at the outset

of the proceedings could obviate the need for litigation in the bankruptcy court. Whether

subject matter jurisdiction exists in the Bankruptcy Court clearly constitutes such a

dispositive question. Accordingly, the August 7 Order qualifies as a "final" order from

which appeal lies as of right. 28 U.S.C. § 158(a)(1); Fed. R. Bankr. P. 8001(a).

Alternatively, in the event that the Court concludes that the August 7 Order is not

"final" for purposes of § 158, leave to appeal should be granted. The threshold question

of whether the Bankruptcy Court may exercise jurisdiction over this breach of contract

claim predicated solely on state law, brought after Plan confirmation, to recover sums

unnecessary for consummation of the Plan represents a controlling question of law.

Moreover, as the Third Circuit's discussion in the seminal case of *Binder v. Price

Waterhouse & Co. LLP* (*In re Resorts International, Inc.*), 372 F.3d 154 (3d Cir. 2004),

makes clear, the exercise of determining whether a sufficiently "close nexus" exists

between a post-Plan confirmation proceeding and a bankruptcy case so as to establish the

proceeding within the scope of the bankruptcy courts' limited "related to" jurisdiction

presents substantial ground for a difference of opinion. Indeed, Judge Walrath said as

-5-

much during oral argument below, acknowledging that the facts in this case made the
jurisdictional issue a "close case." Ex. B at 15. That an immediate resolution of this
question may materially advance the ultimate termination of the Adversary Proceeding is
self-evident: In the absence of jurisdiction, the proceedings in the Bankruptcy Court will
be terminated. Accordingly, to the extent that the August 7 Order may be deemed non-
final, the Court should grant Genesis leave to appeal that ruling.

## ARGUMENT

## I. UNDER WELL ESTABLISHED THIRD CIRCUIT PRECEDENT, THE AUGUST 7 ORDER CONSTITUTES A "FINAL" ORDER.

Under § 158(a), this Court has "jurisdiction to hear appeals . . . from final
judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1). "In the
context of bankruptcy appeals, the Third Circuit has set forth a flexible, pragmatic
approach to determining whether an order of the Bankruptcy Court is final." *Hylland v.
Northwestern Corp. (In re Northwestern Corp.)*, 319 B.R. 68, 72 (D. Del. 2005); *see also
In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005) ("In bankruptcy
cases, finality is construed more broadly than for other types of civil cases.");
*Southeastern Sprinkler Co. v. Meyertech Corp. (In re Meyertech Corp.)*, 831 F.2d 410,
414 (3d Cir. 1987) ("In bankruptcy matters we have consistently considered finality in a
more pragmatic and less technical sense than in other matters and the concept, for
purposes of appellate jurisdiction, should be viewed functionally."). "The same rationale
applies equally to an order of the bankruptcy judge as to an order of the district court."
*Commerce Bank v. Mountain View Vill., Inc.*, 5 F.3d 34, 37 (3d Cir. 1993).

In implementing this functional approach, courts in this district have identified a variety of factors to consider when assessing whether a bankruptcy court order is final for purposes of appeal:

> (1) whether the order leaves additional work to be done by the Bankruptcy Court; (2) whether the order implicates purely legal issues; (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate; (4) the necessity for further fact-finding on remand to the Bankruptcy Court; (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy.

*In re Northwestern Corp.*, 319 B.R. at 72 (citations omitted). "A particular number or combination of factors is not required for the Court to conclude that an order is final and appealable." *Id.*

These factors clearly point to the conclusion that the August 7 Order is a "final" one under the Third Circuit jurisprudence. The order implicates a purely legal issue that does not require any further fact-finding by the Bankruptcy Court in the event of remand. If affirmed, the order will result in the continued litigation of the Adversary Proceeding, but the jurisdictional question will have been definitively resolved. *See id.* at 73 ("The Bankruptcy Court's decision is not conditioned on additional factual findings or proceedings, and no further work is left for the Bankruptcy Court to do with respect to Appellant's motion . . . ."). While this Court's decision as to the jurisdictional issue will not have a preclusive effect on the merits of continuing litigation in the Bankruptcy Court (if any), if the Court does not hear the appeal now, Genesis will be unable to obtain *effective* review of the wholly separate and fundamental jurisdictional question prior to being forced to litigate the Adversary Proceeding to conclusion. The interests of judicial

-7-

economy thus strongly counsel in favor of resolution of the question presented now in order to prevent unnecessary litigation of the Adversary Proceeding.

The August 7 Order has no effect on the assets of Coram's estate, which would normally weigh against a finding of finality. In the posture of this case, however, the fact that resolution of the Trustee's state law breach of contract claim is not necessary for consummation of the already confirmed Plan or have any meaningful impact on the assets of the post-confirmation estate actually militates in favor of finding finality. It is precisely because no such impact exists that, under the governing Third Circuit standard (*see infra* at 12), the predicate for bankruptcy court jurisdiction is lacking.

In comparable circumstances, the courts of this Circuit have held that bankruptcy court orders denying motions to dismiss and other orders commonly deemed interlocutory in the non-bankruptcy context were final orders giving rise to appeals as of right. In so holding, the Third Circuit and lower courts have highlighted the central role that interests of judicial economy play in the pragmatic approach to finality: "If the order here is not now appealable the entire bankruptcy proceedings must be completed before it can be determined whether they were proper in the first place. We do not view such a resolution as either desirable or practical." *In re Christian*, 804 F.2d 46, 48 (3d Cir. 1986) (holding that bankruptcy court order denying motion to dismiss for bad faith and district court affirming same were "final" orders); *see also In re Brown*, 916 F.2d 120, 123-24 (3d Cir. 1990) (same); *County Banking Trust Co. v. Kempner* (*In re Kempner*), 152 B.R. 37, 38 n.2 (D. Del. 1993) (holding that denial of motion to dismiss Chapter 7 proceeding was "final"); *Enterprise Energy Corp. v. United States* (*In re Columbia Gas*

-8-

*Sys., Inc.*), 146 B.R. 106, 111 (D. Del. 1992) (holding that denial of motion to compel

debtor to assume or reject settlement agreement was "final").

The rationale of *In re Christian*, and the functional approach to finality it

embodies, has been applied to the question of whether a denial of a motion to dismiss for

lack of subject matter jurisdiction constitutes a final order under § 158(a)(1). That court

concluded that such order is indeed final. *Gibbons v. Stemcor USA, Inc.* (*In re B.S.*

*Livingston & Co.*), 186 B.R. 841 (D.N.J. 1995). *In re B.S. Livingston* involved an

adversary complaint brought by the Chapter 7 Trustee against the debtor's principals

alleging that the debtor's pre-bankruptcy sale of its assets to another firm constituted a

fraudulent conveyance. The principals moved to dismiss, arguing that the bankruptcy

court lacked jurisdiction over the complaint because the debtor did not have any interest

in the transferred assets by virtue of an earlier order of the bankruptcy court that lifted the

automatic stay to permit a group of banks to pursue their rights with respect to those

assets. The order lifting the stay further provided that the debtor had no equity interest in

the assets at issue.

The bankruptcy court denied the motion to dismiss, and the district court found

that it had appellate jurisdiction based upon the Third Circuit's opinion in *In re Christian*.

The court concluded that the order denying the motion to dismiss constituted a final

order:

> This rationale [of judicial economy] is particularly apt here
> where this court is faced with the prospect of conducting a
> trial on the underlying allegations. The critical question
> presented by this appeal is whether this court has subject
> matter jurisdiction over the adversary complaint. It would
> seem extraordinarily impractical to await the outcome of
> this litigation on the merits before determining that issue.
> Accordingly, this court holds that, under the reasoning of

-9-

>the *Matter of Christian* court, the order denying the motion
>to dismiss and/or for summary judgment represents a "final
>order" over which this court may exercise appellate
>jurisdiction.

*Id.* at 849-50; *see also In re Meyertech Corp.,* 831 F.2d at 414 ("A decision now will also

preclude the necessity of further activity by the fact-finding tribunal, will obliterate the

need for more litigation and serves the ever-prevailing interest of judicial economy.").

Here, the same "ever-prevailing interests of judicial economy" and discrete, legal

nature of the question presented establish that the August 7 Order should be deemed

"final" for purposes of this Court's appellate jurisdiction.

## II.   IN THE ALTERNATIVE, THE AUGUST 7 ORDER SATISFIES THE STANDARDS GOVERNING REVIEW OF INTERLOCUTORY ORDERS OF THE BANKRUPTCY COURT.

In addition to "final judgments, orders, and decrees," the "district courts of the

United States shall have jurisdiction to hear appeals . . . with leave of the court, from

other interlocutory orders and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1),

(3); *see also* Fed. R. Bankr. P. 8001(b). "No specific standards for determining when

interlocutory appeals are appropriate are contained in the Bankruptcy Rules or the Code."

*First Am. Bank v. Century Glove, Inc.*, 64 B.R. 958, 961 (D. Del. 1986). "In establishing

the criteria for appeals from interlocutory orders in bankruptcy cases, courts have relied

by analogy on 28 U.S.C. § 1292(b)," which applies to appeals of interlocutory orders of

the district courts to the courts of appeals. *Id.*; *see also Bertoli v. D'Avella* (*In re Bertoli*),

812 F.2d 136, 137 (3d Cir. 1987) (approving district court's application of § 1292(b)

criteria to review of bankruptcy court's interlocutory order); *Official Comm. of Asbestos*

*Pers. Injury Claimants v. Sealed Air Corp.* (*In re W.R. Grace & Co.*), 285 B.R. 148, 162

(Bankr. D. Del. 2002) (applying § 1292(b) standards in preemptively certifying

-10-

interlocutory order for appeal to district court); *In re GroupHealth P'ship, Inc.*, No. 92-0124, 1992 WL 96333, at \*1 (E.D. Pa. Apr. 21, 1992) ("In the absence of such guidance from section 158(a) itself, courts in this district and others have turned to 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district court to the court of appeals.").

"Under § 1292(b), an interlocutory order may be appealed where a district court certifies that 1) the order from which the appeal is taken involves a controlling question of law; 2) there is substantial ground for difference of opinion as to the controlling question of law; and 3) an immediate appeal may materially advance the ultimate termination of the litigation." *Official Bondholders Comm. v. Chase Manhattan Bank* (*In re Marvel Entm't Group, Inc.*), 209 B.R. 832, 837 (D. Del. 1997). The August 7 Order unquestionably satisfies these criteria.

## A.    The Existence of Subject Matter Jurisdiction is Unquestionably a Controlling Question of Law.

First, "[t]he bankruptcy court's order involves a controlling question of law. A controlling question of law at the very least encompasses a ruling which, if erroneous, would be reversible error on final appeal." *Id.* (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). The existence or absence of subject matter jurisdiction constitutes the paradigmatic controlling question of law: If erroneous, the bankruptcy court's ruling is not only reversible error on final appeal, its reversal would retroactively deprive the bankruptcy court of the ability to hear the dispute and nullify any further rulings in the Adversary Proceeding. Because resolution of the threshold jurisdictional question could lead to termination of the litigation, it is by definition "a controlling question of law." *Id.*

-11-

**B.     The "Close Nexus" Test Applicable to Questions of Post-Confirmation Jurisdiction Provides Substantial Ground for a Difference of Opinion.**

Second, "there is substantial ground for difference of opinion" as to the scope of a bankruptcy court's jurisdiction over adversary proceedings brought after the debtor's plan of reorganization has been confirmed. *Id.* Judge Walrath has already voiced her agreement with this proposition, noting that the facts here presented a close case in that regard. Ex. B at 15. Controlling Third Circuit authority, however, supports the notion that, while this issue may be close, ultimately the Bankruptcy Court lacks subject matter jurisdiction over the state-law governed, post-confirmation contract dispute.

The Third Circuit has observed that "[t]he post-confirmation context of this dispute affects our 'related to' inquiry because bankruptcy court jurisdiction must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." *In re Resorts Int'l, Inc.*, 372 F.3d at 164 (internal quotation marks and citation omitted). After surveying the case law, the *Resorts International* court concluded that "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166-67; *see also Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984). The requisite "close nexus" must be one "to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of a confirmed plan." *Id.* at 168-69.

Genesis respectfully disagrees with the Bankruptcy Court's resolution of the jurisdictional question here and believes that the statutorily restricted jurisdiction of bankruptcy courts—which weakens considerably after confirmation of the Plan—does

not extend to this post-confirmation action governed exclusively by state law. The mere potential for a recovery from Genesis that may ultimately inure to the benefit of creditors is insufficient to confer jurisdiction on the Bankruptcy Court. Nor does the fact that the Trustee has asserted the cause of action rather than a private litigation trustee alter that conclusion. *See* Ex. B at 17. The settlement of the Underlying Action has been paid, and the proceeds of the Policy are unnecessary for consummation of the Plan. The continuing existence of the bankruptcy estate post-confirmation pending completion of the Plan does not create jurisdiction where, as here, the Trustee, post-confirmation, effectively functions as a private litigation trustee. The Bankruptcy Court reads *Resorts International* differently but acknowledged that the question was a "close" one. *Id.* at 16. In any event, that determination regarding that purely legal question is subject to *de novo* review in this Court. *E.g., American Flint Glass Workers Union v. Anchor Resolution Trust Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). Accordingly, the question presented by the August 7 Order meets the second § 1292(b) factor.

## C.    Reversal of the Bankruptcy Court Would Terminate the Adversary Proceeding.

Third, "immediate appeal may materially advance the ultimate termination of the litigation" because reversal of the bankruptcy court would result in a dismissal of the Adversary Proceeding. "[T]he issue that [Genesis] seeks to have addressed on interlocutory appeal is clearly one that, if decided in [Genesis]'s favor, would materially advance the ultimate termination of the litigation by depriving the Bankruptcy Court of jurisdiction over [the Adversary Proceeding]." *In re GroupHealth*, 1992 WL 96333, at *2. Because reversal of the August 7 Order would obviate the need for any further proceedings in the bankruptcy court, the order manifestly satisfies the third § 1292(b)

-13-

criterion. *See In re Marvel*, 209 B.R. at 837 (finding criterion met where resolution favorable to appellant "would obviate the need for the bankruptcy court to conduct a fact-intensive hearing" and "could also result in the speedy conclusion of the adversary proceedings"). "Certainly, if the bankruptcy court lacked subject matter jurisdiction, it is far better to know that now, rather than after a trial in this matter." *In re B.S. Livingston & Co*, 186 B.R. at 850.

In sum, the jurisdictional question presented by the instant appeal is precisely the type of issue appropriate for resolution on interlocutory appeal. As such, the Court, in the event it does not determine that the August 7 Order is "final," should grant Genesis leave to appeal and consider the jurisdictional question on the merits.

## CONCLUSION

For the reasons set forth above, Genesis respectfully requests that the Court either (1) determine that the August 7 Order constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1) from which Genesis may appeal as of right; or (2) grant Genesis's motion for leave to appeal the August 7, 2006 Order of the Bankruptcy Court finding it has subject jurisdiction over this post-confirmation Adversary Proceeding.

Dated this 18th day of August 2006

Respectfully Submitted,
ROSENTHAL, MONHAIT & GODDESS, P.A.

OF COUNSEL:
Lewis K. Loss
Thomas J. Judge
Thompson, Loss & Judge, LLP
1919 Pennsylvania Avenue, N.W.
Suite M-200
Washington, D.C. 20006-3458
   Tel: (202) 772-5170
   Fax: (202) 772-5180

By:   /s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801
302.656.4433
ckeener@rmgglaw.com

Attorneys for Defendant-Appellant
Genesis Insurance Company

-14-

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, Esquire, hereby certify that on August 18, 2006, I caused

to be electronically filed with the Clerk of the Court **BRIEF OF DEFENDANT-**

**APPELLANT, GENESIS INSURANCE COMPANY, IN SUPPORT OF ITS**

**MOTION FOR LEAVE TO APPEAL THE AUGUST 7, 2006 ORDER OF THE**

**BANKRUPTCY COURT** using CM/ECF, which will send notification of such filing to

the following:

> Michael Jason Barrie, Esquire
> Richard A. Barkasy, Esquire
> Schnader Harrison Segal & Lewis LLP
> 824 Market Street
> Suite 1001
> Wilmington, DE 19801

/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| CORAM HEALTHCARE CORP. and CORAM, INC., | : Case No. 00-3299 (MFW) |
| | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |

| | |
|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. | : Adv. Proc. No. 06-50639-MFW |
| | : |
| | : |
| | : Docket Ref. Nos.: 5, 7, 11, 17 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| GENESIS INSURANCE COMPANY, | : |
| | : |
| Defendant. | : |
| | : |

---

### ORDER DENYING MOTION OF GENESIS INSURANCE COMPANY
### TO DISMISS THE COMPLAINT

AND NOW, this ___ day of ___ , 2006, upon

consideration of: (i) the Motion of Genesis Insurance Company to Dismiss the Complaint

(Docket No. 5, filed on June 5, 2006) (the "Motion"); (ii) the Opening Brief of Defendant

Genesis Insurance Company In Support of Its Motion to Dismiss the Complaint (Docket No.

7, filed in June 5, 2006); (iii) the Answering Brief of Plaintiff Arlin M. Adams, Chapter 11

Trustee of Coram Healthcare Corp. and Coram, Inc. in Opposition to Motion of Genesis

Insurance Company to Dismiss the Complaint (Docket No. 11, filed on June 21, 2006); and

(iv) the Reply Brief of Defendant Genesis Insurance Company in Support of its Motion to

PHDATA 1383127_1

Dismiss the Complaint (Docket No. 17, filed in June 28, 2006); and the Court having heard

oral argument on the Motion; and the Court finding that it has subject matter jurisdiction over

this adversary proceeding pursuant to 28 U.S.C. §§ 157(a)&(c)(1) and 1334(b) because it is

related to a case under Title 11 of the United States Code; and for the reasons set forth on the

record, including at the hearing held before the Court on July 25, 2006; and after due

deliberation thereon and sufficient cause appearing therefore, it is

   ORDERED, that the Motion be and hereby is **DENIED**.


        _Mary F. Walrath_
        Mary F. Walrath, C.U.S.B.J.

MIDATA 1383127_1

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                . Case No. 00-3299(MFW)
                                      .
                                      . (Jointly Administered)
CORAM HEALTHCARE CORP. and            .
CORAM, INC.,                          .
                                      .
                                      .
            Debtors.                  .
. . . . . . . . . . . . . . . . .     .
ARLIN M. ADAMS, Chapter 11            . Adv. Proc. No. 06-50639(MFW)
Trustee of the Bankruptcy             .
Estates of Coram Healthcare           .
Corp. and Coram, Inc.,                .
                                      . 824 Market Street
            Plaintiff,                . Wilmington, Delaware 19801
                                      .
       vs.                            .
                                      .
GENESIS INSURANCE COMPANY,            . July 25, 2006
                                      . 3:59 p.m.
            Defendant.                .
. . . . . . . . . . . . . .           .

TRANSCRIPT OF HEARING
BEFORE HONORABLE MARY F. WALRATH, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

APPEARANCES:

For the Chapter 11 Trustee:    Schnader Harrison Segal & Lewis,
                                 LLP
                               By:  BARRY E. BRESSLER, ESQ.
                                    RICHARD BARKASY, ESQ.
                               1600 Market Street
                               Suite 3600
                               Philadelphia, PA  19103

Audio Operator:                Brandon McCarthy

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

APPEARANCES (Cont'd.):

For Genesis Insurance Co.:        Rosenthal, Monhait & Goddess,
                                     P.A.
                                  By:  CARMELLA P. KEENER, ESQ.
                                  919 Market Street
                                  Suite 1402
                                  P.O. Box 1070
                                  Wilmington, DE 19899

                                  Thompson, Loss & Judge LLP
                                  By:  THOMAS J. JUDGE, ESQ.
                                  1919 Pennsylvania Avenue NW
                                  Suite M-200
                                  Washington, DC  20006

3

1           THE CLERK:  All rise.  You may be seated.

2           THE COURT:  Good afternoon.

3           ALL:  Good afternoon, Your Honor.

4           MS. KEENER:  Good afternoon, Your Honor.  May it
5  please the Court.  Carmella Keener of Rosenthal, Monhait, and
6  Goddess on behalf of Genesis Insurance Company.  I rise simply
7  to reintroduce to the Court my co-counsel Thomas Judge.

8           THE COURT:  All right.  Good morning.  Good
9  afternoon.

10          MR. JUDGE:  Good afternoon, Your Honor.  Tom Judge on
11 behalf of the defendant Genesis Insurance Company.  We're here
12 this afternoon on my client's motion to dismiss for lack of
13 subject matter jurisdiction.  We believe that this case should
14 be dismissed, because now post-confirmation for Coram the
15 Court's subject matter jurisdiction is appropriately and
16 necessarily restricted to matters that are necessarily linked
17 to the implementation and execution and consummation of the
18 bankruptcy plan, and that's not -- this case is not that case.

19          The Trustee has responded essentially, and it's
20 trying to take the Court's holding in AstroPower as an
21 invitation to expand the Court's subject matter statutory
22 jurisdiction in a way that we believe is inappropriate.
23 AstroPower, as I read it -- I've read it a number of times now
24 -- you know, makes it very clear and distinguishes this Court's
25 holding in Insilco where you have a situation where a trustee

**J&J COURT TRANSCRIBERS, INC.**

4

1  is pursuing claims post-confirmation, and there is a general
2  retaining clause about the trustee be able to pursue a whole
3  wide variety of numerous unidentified claims.  That was a
4  different situation than when you addressed <u>AstroPower</u> where a
5  specific cause of action or cause of actions were identified as
6  to a particular set of transactions.  And, Your Honor, I, you
7  know, recognize that the creditors and the Court in approving
8  the plan had relied on the fact that there would be pursuit of
9  those claims and approval of the plan.  It was part and core of
10 the plan.

11        Here we have a situation more like <u>Insilco</u> where you
12 have a general retainer clause.  There are -- the Trustee's
13 empowered to pursue various causes of action.  There are in the
14 plan for Coram specifically identified causes of action that
15 were part of the plan.  They involve claims against
16 PriceWaterhouse and claims against Coram's former directors and
17 officers.  This claim against the Genesis Insurance Company was
18 not identified.  It was not part of the plan.  It was not
19 something that creditors were voting on and expecting the
20 estate to pursue, and indeed, as highlighted by the Trustee in
21 their brief, the claim didn't even accrue until after the plan
22 was confirmed.

23        THE COURT:  Well, I think they say accrued when the
24 plan was confirmed.

25        MR. JUDGE:  Well, you would have to have the

**J&J COURT TRANSCRIBERS, INC.**

5

1 approval, and once the approval occurs, then the settlement is
2 finalized.  But be that as it may, the bottom line is that when
3 the plan was being approved, there was no plea to the creditors
4 or explanation to the creditors that there was going to be a
5 recovery against Genesis Insurance Company in connection with
6 the Arnett settlement.  That was not part and parcel of the
7 plan's approval, and that being the case, this case is too
8 attenuated to be part of the Court's subject matter
9 jurisdiction.

10          THE COURT:  All right.  I understand the argument.
11          MR. JUDGE:  Thank you, Your Honor.

12          MR. BARKASY:  Your Honor, Richard Barkasy from
13 Schnader, Harrison, Segal, and Lewis for the Chapter 11
14 Trustee, Arlin Adams.  Your Honor, the _Resorts_ test for related
15 to jurisdiction is whether there was a close nexus between the
16 action and the bankruptcy plan or proceeding.  In the _Bank of_
17 _America_ case Judge Farnan called that a broad interpretation
18 related to jurisdiction.  We believe -- the Trustee believes
19 that there's a close nexus here for several reasons.

20          First, the claim -- unlike in some of the cases being
21 cited and relied upon by Genesis, the claim is brought by a
22 Chapter 11 Trustee appointed under the Bankruptcy Code and
23 operating under the terms of the Bankruptcy Code.  It's not
24 being brought by a private litigation trust.  Unlike some of
25 the cases relied upon by Genesis, unlike in _Resorts_, the

**J&J COURT TRANSCRIBERS, INC.**

6

1  creditors here have not exchanged their claims for interests in
2  a litigation trust.  The creditors remain creditors.  As Your
3  Honor's confirmation order specifically provides and the plan
4  specifically provides, the Trustee is maintaining the causes of
5  action as defined in the plan and in the confirmation order on
6  behalf of the debtors' estate.  There is still an estate that's
7  being administered here by a Trustee.  It's not a private
8  litigation trust, and the creditors have not relinquished their
9  claims to the estate.

10        As the confirmation order provides and the plan
11 provides, the Trustee is the sole party authorized to bring the
12 cause of action, to compromise them, and to seek Bankruptcy
13 Court approval of the settlements.  Consistent with that
14 language, the extent that the Trustee has entered into
15 settlements post-confirmation, he has come to the Court and
16 requested Bankruptcy Court approval.  We think those things
17 create in and of themselves a close nexus.

18        There's also certainly a logical connection -- a
19 logical, factual connection between the claim here asserted by
20 the Trustee against Genesis and the Chapter 11 case and plan.
21 The Trustee is seeking reimbursement for the amount paid by the
22 estate to the Arnett bankruptcy estate in accordance with the
23 Arnett settlement agreement that was approved as part of the
24 confirmation of the Chapter 11 Trustee's plan of reorganization
25 in the core matter.

**J&J COURT TRANSCRIBERS, INC.**

7

1            The -- Genesis -- as Genesis says in its opening
2    brief, it asserts that the Trustee's claim is barred by the
3    provisions of the policy that require written consent to any
4    settlement on behalf of Genesis.  That policy provision also
5    provides that consent cannot be unreasonably withheld.  It's
6    the Trustee's position that Genesis is not entitled to withhold
7    consent to a reasonable settlement, otherwise, it is
8    unreasonably withholding consent.  There will be in this
9    litigation, therefore, arguments made.  I think there's no
10   question that there will be arguments made about the
11   reasonableness of the settlement, about the impact of the
12   Court's prior ruling approving the settlement on the
13   reasonableness determination made by Genesis.

14           Here there is a close factual connection in many ways
15   between the Trustee's cause and the plan.  It's not much
16   different.  Of course, there's also a connection, because the
17   money that's recovered here is going to be paid to creditors in
18   the first instance to satisfy their claims of post-petition
19   interest.  At this point in the case it's not that much
20   different a posture than the case was in in the Mobile Tool --
21   Your Honor's Mobile Tool decision where you had a converted
22   Chapter 11, and you had a trustee engage in a declaratory
23   judgment action with Great American Insurance Company, and Your
24   Honor held that it was related to jurisdiction, because there
25   would be an impact on the estate, because there was certainly a

**J&J COURT TRANSCRIBERS, INC.**

8

1 relationship between what insurance coverage there would be and
2 how much money there would be in the estate to distribute.

3          That is really what exists right now even though
4 we're post-confirmation.  We have a trustee.  We have
5 creditors.  We have a claim that's specifically authorized by
6 the plan for the Trustee to make on behalf of those creditors
7 the same reasoning and logic the Trustee believes holds true
8 here.  All of those things when added together, we believe,
9 create a sufficiently close nexus for the Trustee's action to
10 be related to the Chapter 11 case.

11          THE COURT:  All right.  I understand your argument.
12          MR. JUDGE:  Your Honor, at bottom what I hear is a
13 contention that if a recovery is had against Genesis, since
14 this will benefit creditors ultimately, this creates subject
15 matter jurisdiction, and the case law is very clear that that's
16 not a determinative factor in determining whether this actually
17 is a necessary link to the consummation and implementation and
18 execution of the confirmed plan.

19          THE COURT:  Well, that was one I guess distinguishing
20 feature in the Resorts case, and I don't know why the Third
21 Circuit referred to it, but they did refer to it in the course
22 of their determining whether there was a nexus, and that was
23 that there weren't even creditors left anymore.  They had
24 exchanged their interests for shares in the litigation trust.
25          MR. JUDGE:  That's right, Your Honor, but since then

9

1  other courts have indicated -- and we cite two in our brief.
2  And I --

3          THE COURT:   That is not enough that you're going to
4  get more money to distribute.  I understand.

5          MR. JUDGE:   Exactly, and --

6          THE COURT:   That would cover all lawsuits I guess.

7          MR. JUDGE:   Right.  And, really, the way the Trustee
8  has framed this, by virtue of his position as a Chapter 11
9  Trustee, any and all the claims that he had as blanket sort of
10  authorization to pursue automatically are subject to this
11  Court's jurisdiction.  And frankly, as I interpret the case
12  law, that is not supposed to be the case.  The fact that he has
13  assigned general causes of action arising pre-petition that he
14  can pursue on behalf of the estate does not mean that those
15  claims are necessarily linked to the consummation and execution
16  and interpretation of the bankruptcy plan.

17          THE COURT:   Well, I don't think it needs to be
18  related to interpretation or consummation.  Well, consummation
19  of the plan perhaps.  But isn't it significant that we have a
20  Chapter 11 Trustee here rather than a litigation trust,
21  especially because in most litigation trusts the agreements
22  provide that they can do all sorts of things?  Whereas, a
23  Chapter 11 Trustee has certain specified duties identified in
24  the Bankruptcy Code that all relate to administration of the
25  estate.

**J&J COURT TRANSCRIBERS, INC.**

1          MR. JUDGE:   I don't see how that status somehow
2  creates a problem for the management of the estate.   The
3  Trustee has his duties and obligations in pursuing these causes
4  of action and how he pursues them are dictated by the Code, but
5  that doesn't make this claim -- this state law claim for
6  insurance coverage somehow part and parcel of the bankruptcy
7  plan or provide a close nexus to the bankruptcy plan.

8          THE COURT:   Well, or subject to the subject matter
9  jurisdiction of the Court.

10         MR. JUDGE:   I guess what I'm saying, Your Honor, is
11  the fact that he's a trustee should not create subject matter
12  jurisdiction for the Court.   That in itself and by itself
13  should not be a factor that creates subject matter
14  jurisdiction.   We have a state law claim for insurance coverage
15  that has no bearing on the plan whatsoever.   The settlement
16  that they referred to -- the underlying settlement is already
17  paid.   There's no reference in the plan to obtain reimbursement
18  from anybody but on Genesis Insurance Company.   It neither --
19  it doesn't affect the consummation of the plan and the fact
20  that there's a Chapter 11 Trustee rather than a litigation
21  trustee, and whatever their obligations or guidelines are at
22  any given moment should not affect whether this actually
23  requires -- you know, is going to affect the implementation of
24  the plan or affect the consummation of the plan.   There's not
25  -- I mean, otherwise, any automobile insurance case, any other

**J&J COURT TRANSCRIBERS, INC.**

1  case where the Trustee might recover money on behalf of the
2  estate would be covered under this Court's subject matter
3  jurisdiction after the plan is confirmed, and, frankly, I just
4  don't see how International Resorts or, you know, decisions
5  from this Court and other courts really can be reconciled with
6  that position.

7         THE COURT:  Well, but the Third Circuit did make a
8  point of the fact that while the reorganized debtor is off
9  doing his own thing, and this really doesn't affect the estate,
10 because there isn't an estate left, if you will.  But in this
11 case there is an estate left.

12         MR. JUDGE:  There's still an estate in terms of
13 there's not a private litigation trust.  The reorganized debtor
14 is up and operating and carrying on.  The recovery -- instead
15 of having the creditors assumed within a trust, they're just
16 there part of the estate.  But it doesn't require -- again, the
17 only thing that's happening here, the plan is not being
18 implemented.  There's not going to be a holdup in the
19 implementation of the plan if this case doesn't -- if this
20 Court doesn't have jurisdiction over the case, or this case
21 doesn't resolve or isn't even pursued.  The plan will go
22 forward as is, and the only benefit being derived here to the
23 estate, as noted in other cases, is the creditors may have more
24 money for the estate.  That doesn't create subject matter
25 jurisdiction.

**J&J COURT TRANSCRIBERS, INC.**

12

1          THE COURT:  Okay.  Any reply?  I'm sorry.  Anything
2  further?

3          MR. JUDGE:  Well, I just -- the Trustee has pursued
4  other claims, including the claim that was marked out in the
5  plan against the former directors and officers.  That's in
6  District Court.  Why does this case have to be in Bankruptcy
7  Court?  There's really no -- it's an insurance coverage claim.
8  It turns on the policy, and their argument -- very speculative
9  argument about what's going to be entailed in the defense by
10 Genesis that's going to implicate this court.  Well, I very
11 strongly disagree that we have anything to say that anything
12 this Court has done in the bankruptcy proceedings to respond to
13 this claim for coverage.  It's a state law claim for coverage,
14 and there either is or is not coverage under the policy.  It
15 doesn't turn on bankruptcy law, and it doesn't turn on any
16 decision by this Court.

17         THE COURT:  Well, I think they would argue that on
18 the issue of whether or not you reasonably withheld your
19 consent, the fact that the settlement itself was determined to
20 be reasonable as part of the confirmation does impact on that
21 ruling.

22         MR. JUDGE:  Well, I guess if they're suggesting --
23 and I don't think in good faith they can -- that Your Honor,
24 when you approved the Arnett settlement, was thinking that the
25 settlement was reasonable from the perspective of the insured

**J&J COURT TRANSCRIBERS, INC.**

13

1 | directors and officers and from their insurance company. You

2 | know, I don't think anybody can dispute -- that's not an issue

3 | that was presented before Your Honor. The issue presented

4 | before Your Honor was whether the Arnett settlement was fair

5 | and reasonable from the standpoint of the bankruptcy estate.

6 | Was enough being paid?

7 | Not to go too far into the details of this case, but

8 | essentially -- I mean part of the problem that the Trustee

9 | faces is that the claim that Arnett was pursuing was not just a

10 | claim against the -- their directors and officers at Coram.

11 | There were other claims that had no bearing or no coverage

12 | implications under our policy. This Court was not asked to

13 | make a coverage determination when it approved this settlement.

14 | The Court was asked to do something relatively simple, but it

15 | was important, and it did a, you know, careful analysis whether

16 | the settlement was fair and reasonable from the standpoint of

17 | the Coram estates. Were the creditors -- was the estate

18 | receiving enough consideration in resolving its claim, because

19 | it had affirmative claims against the Arnett subsidiaries?

20 | Likewise, the Bankruptcy Court for the Arnett

21 | subsidiaries approved the settlement as fair and reasonable

22 | from the standpoint if the Arnett estates. There's no

23 | resolution of the insurance coverage issues. Those issues are

24 | still open to be  resolved. That's why they brought a suit.

25 | MR. BARKASY: Your Honor, I think all of the cases

**J&J COURT TRANSCRIBERS, INC.**

1  relied upon by Genesis involve litigation trusts.  The Third
2  Circuit in <u>Resorts</u> specifically addressed the situation there
3  where you had a litigation -- private litigation trust paid
4  under a plan, a litigation Trustee, and creditors who had
5  specifically relinquished their claims against the estate,
6  specifically discussed that there was no longer an estate
7  making a distinguishing pre-confirmation and post-confirmation
8  situation.

9          The Court said that it was concerned with the spector
10  of unending jurisdiction over continuing trusts.  This case is
11  clearly different for those reasons.  We have a Chapter 11
12  Trustee.  We have an estate.  We have creditors.  With regard
13  to whether there's a factual -- going to -- there's a logical,
14  factual connection, as one case that we cited talked about.  I
15  think you can't deny that there's some logical, factual
16  connection.  We're talking about a settlement that was approved
17  in the bankruptcy case.  But, moreover, I think there's no
18  question that there are going to be issues in the case related
19  to the proceedings to approve the settlement.  It will
20  certainly be the Trustee's position that it is unreasonable for
21  Genesis to take a position that there is no coverage -- zero
22  coverage for this claim, nothing at all, because there was no
23  consent.  And the Trustee is going to take the position clearly
24  that one of the factors -- at a minimum one of the factors that
25  Genesis should've considered was that a court heard significant

15

1 testimony during the confirmation hearing and parties who sat
2 in a similar position to Genesis, creditors and shareholders,
3 shareholders who were represented by, as I recall, a very
4 active equity committee who stood in a very similar position,
5 and whether or not it was reasonable under -- for Genesis under
6 those circumstances to deny coverage.  I think there's clear,
7 factual relationship.

8        Will it ultimately be determinative?  I don't know,
9 but I think over and above the fact that we're dealing with a
10 Chapter 11 Trustee, the fact that the Trustee is bringing the
11 claim under the confirmation order on behalf of the estate, the
12 fact that proceeds are going to go to creditors if they're
13 recovered, the fact the Trustee is going to come to the
14 Bankruptcy Court to seek approval of any compromise of the case
15 combined with the close, factual connection between the case
16 and the bankruptcy case create in this matter -- and I don't
17 know in every matter, but in this matter create a significant
18 -- a significantly -- a substantially close nexus between the
19 bankruptcy case and the Trustee's claim.  Thank you, Your
20 Honor.

21        THE COURT:  All right.  Well, it is a close case, but
22 I am convinced that the Trustee is correct.  This case is
23 distinguishable from those, and particularly the Resorts case,
24 which have held that post-confirmation litigation is not
25 subject to the Court's subject matter jurisdiction.  In this

**J&J COURT TRANSCRIBERS, INC.**

 1  case I do find under the <u>Resorts</u> case that there is a close
 2  nexus to the Court's jurisdiction in administering the
 3  confirmed plan.  I think it's significant that in this case
 4  there is a Chapter 11 Trustee, and subject matter jurisdiction
 5  does not depend on the identity of the parties, but the <u>Resorts</u>
 6  case made a point of noting that there was no longer any estate
 7  or estate representative.

 8          In this case there is an estate and an estate
 9  representative rather than a litigation trust.  In this case
10  the creditors still exist and still are looking for a
11  distribution under the auspices of the plan and the Bankruptcy
12  Code.  There will not be limitless litigation, which was the
13  fear of the Third Circuit in <u>Resorts</u>, because this is a pre- --
14  or at least a confirmation claim, so any statute of limitations
15  would run off the confirmation date.  This is not a post-
16  confirmation cause of action as was the case in <u>Resorts</u>.

17          While I agree generally with the courts that have
18  held that post-confirmation jurisdiction should generally be
19  limited to causes of action specifically identified in a plan,
20  I think in this case the fact that this cause of action does
21  have a relationship to a settlement which was permanently
22  identified in the plan and disclosure statement gives it a
23  close enough nexus.  It is not, if you will, a cause of action
24  that just comes out of the blue.

25          So I think there's a close enough nexus to the plan

17

1 and confirmation order to provide that the Court has

2 jurisdiction over this cause of action, so I will deny the

3 motion to dismiss on that basis.

4 MR. JUDGE: Your Honor, could we get a ruling? There

5 was argument about whether this was a core or non-core

6 proceeding.

7 THE COURT: I didn't hear argument on that point,

8 but --

9 MR. JUDGE: I'm sorry. We did not raise argument on

10 that point, because it was not necessary to the -- related to

11 the argument, but in both briefs --

12 THE COURT: Well, it's a related to. It's not a --

13 obviously, it doesn't arise under Chapter 11. I think we've

14 limited it to the related to jurisdiction aspect.

15 MR. BARKASY: Your Honor, we assumed that your ruling

16 was based upon related to jurisdiction not that it was a core

17 proceeding.

18 MR. JUDGE: I guess what I'm asking is if we could

19 have a -- our position is that it's a non-core proceeding. If

20 the Trustee agrees with that, we'd like to have it on the

21 record. If they don't agree with that, we'd like to -- if we

22 can get a ruling, since it was briefed.

23 MR. BARKASY: Your Honor, we agree.

24 THE COURT: All right. All right, then can I get the

25 Trustee's counsel to submit a form of order under certification

**J&J COURT TRANSCRIBERS, INC.**

18

1  of counsel?

2           MR. BARKASY:  Yes, Your Honor.

3           THE COURT:  Okay.

4           MR. BARKASY:  Your Honor, when we were here for the
5  initial conference in the case a few weeks ago, we had
6  discussed a schedule going forward.  We had actually reached
7  some agreements as to time frames.  What I'm suggesting is
8  should the parties get together and submit a proposed
9  scheduling stipulation and order for Your Honor?

10          THE COURT:  I think so.  The parties can work that
11 out.

12          MR. JUDGE:  Yes.  Yes, Your Honor.

13          THE COURT:  All right.  All right, then we'll stand
14 adjourned.  Thank you.

15          MR. JUDGE:  Thank you, Your Honor.

16          ALL:  Thank you, Your Honor.

17                     *  *  *  *  *

18                     **CERTIFICATION**

19          I, PATRICIA C. REPKO, court approved transcriber,
20 certify that the foregoing is a correct transcript from the
21 official electronic sound recording of the proceedings in the
22 above-entitled matter to the best of my ability.

23

24  _____          Date: August 16, 2006
25  PATRICIA C. REPKO
26  J&J COURT TRANSCRIBERS, INC.

                 **J&J COURT TRANSCRIBERS, INC.**